PER CURIAM.
This disciplinary proceeding by The Florida Bar against Marvin J. Powers, a member of The Florida Bar, is before us on a two-count complaint of The Florida Bar and report of referee. The referee’s report and record have been filed with this Court pursuant to Florida Bar Integration Rule, article XI, Rule 11.06(9)(b). The Florida Bar has petitioned for review of the referee’s recommended discipline of suspension from the Bar for one year and thereafter until proof of rehabilitation and seeks disbarment. We have jurisdiction. Art. V, § 15, Fla. Const.
In March of 1979, respondent entered into a relationship with an elderly widow, Mrs. Barnett, that from the outset lent itself to the appearance of impropriety. At no time did he insist that she consult with a neutral advisor. He testified that he assisted her in revoking her former will in favor of a new one naming himself as sole beneficiary to receive her home, then unencumbered, and personal property. In April of 1979 he assisted Mrs. Barnett in executing a power of attorney appointing himself to handle various of her personal and property affairs. On April 3, 1979, he had her deed her home over to his wholly owned corporation in exchange for his caring for her. He mortgaged the property for $24,-000 on June 8.
When Mrs. Barnett became upset about the property transfer, respondent gave her a quit-claim deed to the property, retaining the mortgage money. On August 7, 1979, she revoked the power of attorney. On January 3, 1980, respondent, with notice of the revocation, used the power of attorney to transfer the property back to his corporation. He subsequently sold the house at a profit. Although he agreed to take care of Mrs. Barnett for her lifetime, he discontinued payment of her convalescent home bills. He never established a trust account containing funds to provide for her care. His records are in such a poor state that the money from the mortgage and sale of her property cannot be properly traced. Although he stated in a letter to The Florida Bar dated September 18, 1979, that he had taken out a life insurance policy naming her as beneficiary, he testified before the referee that he had not done so.
Mrs. Barnett instituted a complaint against respondent in late 1979, which was investigated by a grievance committee. *265 The Bar stated in its response to respondent’s motion to dismiss that it closed the file on or about September 17, 1980, based on his representation that he would continue to provide Mrs. Barnett with services and financial assistance for her lifetime. In 1981 it came to the attention of the Bar that respondent was no longer using funds received from the sale of the home for her benefit, and the Bar reopened the complaint on September 8.
The referee recommended that respondent be found guilty of violating Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(4), 9-102(A), 9-102(B)(2) and (3), and Florida Bar Integration Rule, article XI, Rule 11.02(4)(a), (b) and (c), based on the following findings of fact:
As to Count I
1. The respondent at the hearing claimed he was not practicing law during the periods charged in the complaint (Sept. 26, 1979 through March 19, 1980) and therefore his “trust account” though so labeled, was not a trust account and he represented no clients and held no trust monies for clients during that period.
2. Though this was the respondent’s contention he actually performed legal services for Mrs. Edith F. Barnett during this period of time (T. 47-48) and handled monies that should have been considered trust funds.
3. For this reason his position is untenable and proper records should have been maintained. I find such records weren’t properly maintained as can be seen from Bar Ex. 19, and the testimony of Pedro Pizzaro (T. 44-46). See also what the respondent referred to as a “ledger sheet” appearing as Bar Ex. 23. The respondent testifies as to the “ledger sheets” on pages 88-90 or “ledgers” (T. 78 Ex. 23).
4. Monies derived from mortgage and sale of Mrs. Barnett’s property was probably put in an account of “Sand Properties” (T. 57) which was a corporation owned by the respondent.
As to Count II
5. The respondent testified that he got to know [Mrs. Barnett] in 1978 (T. 50), took over her affairs in 1979 and in April of 1979 had her deed her home place to him (T. 48, 54), during that same month in 1979 Mrs. Barnett executed a power of attorney (Bar Ex. 7) to the respondent.
6. On August 7, 1979, Mrs. Barnett by letter (Bar Ex. 2) cancelled the power of attorney. The respondent was made aware of the letter at least by September 14, 1979 (T. 68) page 50 of Depos. Bar Ex. 20, and later in March of 1980 formally cancelled it by written instrument (Bar Ex. 12) that was recorded in March of 1980.
7. In the meantime, the respondent in January of 1980 deeded the property by the use of the power of attorney he had secured in April 1979 and which had been cancelled by letter of August 7, 1979. This revocation had been brought to his attention by September 14,1979. (Pg. 50 Bar Ex. 20)
8. On February 1, 1980, the respondent received a deposit and down payment on the sale of the property and delivered title on May 13, 1980 by deed from Sand Properties. (Bar Ex. 5)
9. In the meantime, the respondent had mortgaged the property for twenty-five thousand dollars ($25,000.00) and retained the monies from that mortgage and subsequently sold the property by deed given May 13, 1980 from his corporation and retained the money from the net proceeds of that sale.
10. In other parts of his testimony respondent testified that Mrs. Barnett had given him some four thousand dollars ($4,000.00) earlier when he first undertook to “handle her affairs.” (T. 85)
11. Subsequently in his testimony, during the period of time when Mrs. Barnett was a patient in a nursing home, he testified that he worked in Texas for some period of time. (T. 83)
*266 12. I find: the respondent failed to properly account for these monies; used powers of attorney after the same had been formally revoked; failed to make payments on behalf of Mrs. Barnett (T. 81-83), if he was in fact at such time, living up to an agreement that he outlined by letter dated August 8, 1979. (T. 80 Bar Ex. 3)
13. The respondent has spent substantial sums of money on behalf of Mrs. Barnett, but because of his failure to keep proper records is not now able to adequately account for the disposition of the monies and by his dissembling has failed to disclose but has obfuscated the true picture of the funds under his control.
14. Though he may have undertaken the task of handling Mrs. Barnett’s affairs altruistically, but because of his dissembling and his failure to keep records, he has now effectively obscured whether or not he is truly indebted to her.
15. Mrs. Barnett at this time may not be competent to testify.
16. The respondent in the meantime has discontinued paying the bills of Mrs. Barnett. (T: 81-83)
17. I find that though the Florida Bar has not proved that the respondent has defrauded Mrs. Barnett out of the sum indicated by the mortgage and sale of the property it is impossible at this time to determine what sum she is due if any at all.
18. The respondent has acted deceitfully or by misrepresentation in handling Mrs. Barnett’s affairs and is guilty of a breach of Disciplinary Rule No. 1-102(A)(4).
Respondent has not petitioned for review of the referee’s findings of fact, and they are therefore approved.
The Bar argues that the referee’s recommended discipline is too lenient for an attorney who in the above-described manner violated the trust of his fiduciary relationship with, and participated in conduct-involving deceit and misrepresentation concerning, an elderly disabled woman.
We agree. This type of action is totally inconsistent with membership in The Florida Bar. Respondent’s record behavior reflects his having preyed upon an aged and infirm widow, and the abysmal state of his financial records makes it impossible to find that he has not done so. We find that this conduct fully warrants disbarment.
We adopt the referee’s recommendations of guilt, but grant the Bar’s requested discipline of disbarment. Marvin J. Powers is hereby disbarred from the practice of law in the State of Florida, effective immediately.* Costs in the amount of $2,119.31 are taxed against respondent.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, EHRLICH and SHAW, JJ„ concur.
McDONALD, J., dissents.

 We accept respondent’s representation that he has not practiced law for several years.