**In re RIVERSIDE SHOPPES, LTD., Debtor.**

**RIVERSIDE SHOPPES, LTD., Plaintiff,**

v.

**CHICAGO TITLE INSURANCE COMPANY, Defendant.**

Bankruptcy No. 87–02233–BKC–SMW.
Adv. No. 87–0421–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

Dec. 11, 1987.

Robert L. Roth, Miami, Fla., for debtor.

Harry Lewis, Holland & Knight, Miami, Fla., for Chicago Title.

Ira Silver, Silver & Silver, P.A., Miami, Fla., for Limited partners.

Joel Aresty, Miami, Fla., for NCNB.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CASE came on to be heard on October 13th, 20th, and 22nd, 1987 upon the Complaint of the debtor, Riverside Shoppes, Ltd., ("Riverside") for a determination by the Court as to the validity, priority and amount of lien or claim as asserted by defendant, Chicago Title Insurance Company, ("Chicago Title"), pursuant to 11 U.S.C. Section 506, and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Riverside is a limited partnership consisting of Gilbert and David Mart as general partners, Jeffrey Mart having previously resigned as a general partner. Additionally, the Marts have limited partnership interests. The remaining members of the limited partnership consist of 36 passive limited partnership investors, from various parts of the country and unrelated to the general partners, who have contributed $815,000.00 to Riverside. Riverside owns property consisting of a combination of a four story commercial office building and commercial strip shopping center located in Stuart, Florida, ("the Riverside shopping center").

An institutional loan in the approximate amount of $3,800,000.00 was advanced by North Carolina National Bank ("NCNB") to Riverside to finance the construction of buildings upon the land owned by Riverside. A previous institutional loan in the approximate amount of $450,000.00 from American Pioneer Savings & Loan Association was assumed by Riverside to purchase the aforementioned real property.

Subsequently, Riverside defaulted in payment on the note and mortgage owed to NCNB. NCNB agreed to reinstate the loan and advance an additional $300,00.00 to Riverside for use in completing the project and making interior improvements. However, a condition precedent within NCNB's written commitment to Riverside for the advance was that a lis pendens filed and recorded by Chicago Title on the property be removed or subordinated to the NCNB loan and additional advance. Chicago Title declined to do either and NCNB withdrew its offer to advance funds.

Chicago Title had instituted suit in the United States District Court against Riverside and various other parties. In conjunction with the lawsuit, Chicago Title filed and recorded a lis pendens against the Riverside shopping center.

The lis pendens seeks, among other things, to enjoin alienation or encumbrance, and to impose a constructive trust or eq-

uitable lien upon various properties owned by the various defendants in the District Court case, including the Riverside shopping center. The only substantive allegations relative to Riverside in the District Court complaint are the following:

"18. Defendants, Jeffrey Mart, David Mart, and Gilbert Mart, created or operated ... Riverside Shoppes, Ltd ... as vehicles to conduct their illegal activities and for the purposes of misleading and defrauding their creditors."

"41. Upon information and belief, proceeds of the diverted funds enumerated above were used by the Mart Group to acquire, enhance, improve or maintain their interests in the Beacon 21 Condominium project as well as one or more of the following parcels of real property ... Riverside Shoppes ... Said property is owned by Jeffrey Mart, Gilbert Mart and David Mart, as general partners of Riverside Shoppes."

Chicago Title now additionally asserts in the instant adversary proceeding that the proceeds from a $300,000.00 loan made by Commonwealth Savings and Loan Association to another Mart family entity, the Beacon 21 Condominium project ("Beacon"), were diverted by the Marts or their agents to Riverside. Furthermore, Chicago Title now argues that other funds not belonging to Riverside were utilized on behalf of Riverside. However, Chicago Title has offered no proof in that regard and, therefore, such claims are waived and the Court will limit its consideration to the allegations regarding the Commonwealth loan proceeds. The parties have agreed Chicago Title is the proper party in interest since it succeeded to the interests of Commonwealth Savings and Loan Association insofar as that loan is concerned.

The refusal of Chicago Title to release or subordinate its lis pendens, in addition to causing NCNB to withdraw the loan advance commitment, caused it to go forward with a foreclosure action against Riverside in the Martin County Circuit Court. Subsequently, Riverside filed the instant Chapter 11 Bankruptcy proceedings and this adversary proceeding seeking to obtain a release of the lis pendens, a determination that Chicago Title improperly filed and recorded the lis pendens and that Chicago Title has no valid liens or claims against Riverside or the Riverside shopping center.

■ Jeffrey Mart acted as the attorney and agent of various entities, including Riverside and Beacon. In this capacity, attorney Mart received large sums of money on behalf of the entities and he, solely, chose the place of deposit of all such funds. The funds were deposited in several different banks and accounts, all of which were treated as one attorney trust account by attorney Mart and his accountant. The entity on whose behalf the funds were being sent to attorney Mart had no direct control over the place or particular account of deposit or the place or particular account from which a disbursement or withdrawal would be made. In fact, the only information any particular entity had was that the money would be deposited to attorney Mart's trust account for his administration.

Accordingly, under attorney Mart's trust account system, the commingling of several entities' funds in the various accounts made it impossible for any individual entity to obtain a disbursement or withdrawal without considering all credits and debits of that entity to or from all the accounts comprising the trust account. Although tracing the funds is not possible, attorney Mart's trust account had sufficient funds deposited to it by Riverside to cover all disbursements made on its behalf. In fact, the trust account owes in excess of $125,-000.00 to Riverside.

Riverside deposited $679,909.08 with attorney Mart from 1985 through April, 1986 and attorney Mart disbursed $554,569.46 on its behalf, leaving a balance due and owing to Riverside from attorney Mart's trust account of approximately $125,339.62. The disbursements include the payment of the American Pioneer loan which Chicago Title alleges was made with funds earmarked for Beacon and consisting of the proceeds from the Commonwealth loan to Beacon.

Chicago Title attempts to isolate loan payments of $300,000.00 and $154,867.80 to American Pioneer Savings & Loan Associa-

tion. Chicago Title argues that these disbursements were made at or about the same time that attorney Mart received into his trust account the proceeds from the Commonwealth loan for Beacon. Therefore, Chicago Title concludes that Riverside benefitted from the funds which it improperly diverted from the use and benefit of Beacon.

However, the receipt into attorney Mart's trust account of the proceeds of the Commonwealth loan to Beacon and the disbursements to American Pioneer on behalf of Riverside occurred on different days. The fact that the transactions occurred within the same month does not alone indicate that the funds were used as alleged by Chicago Title. The Court finds that at all relevant times, Riverside had sufficient funds on deposit in attorney Mart's trust account to make all disbursements which were made on its behalf.

The Court further finds that only Riverside's money was used for Riverside's purposes and no funds were diverted on behalf of Riverside from the proceeds of the Commonwealth loan to Beacon. Chicago Title has failed to prove that any monies belonging to it or its assignors were diverted to the use and benefit of Riverside. Therefore, the Court finds that Riverside does not owe any money to Chicago Title and, accordingly, Chicago Title has no claim, secured or unsecured, against the estate of Riverside.

■ Even if Chicago Title could prove that the funds given to attorney Mart on behalf of Beacon were diverted to Riverside, their claim would still be against attorney Mart and not against Riverside as there has never been any allegation or proof that Riverside participated in such an improper diversion of funds and it is Riverside that owns the real property in question, not attorney Mart. Any liability of attorney Mart to Chicago Title would be limited to attorney Mart's interest, if any, in the limited partnership. Florida Statute Section 608.431 provides that the interest of a member of a limited partnership is personal property and, therefore, no liability could attach against Riverside's property. *See Weisinger v. Rae,* 19 Misc.2d 341, 188 N.Y.S.2d 10 (N.Y.Sup.Ct.1959).

The co-mingling or misuse of funds entrusted to an attorney and deposited to an attorney's trust account may constitute grounds for disciplinary action against that attorney by the Florida Bar. *The Florida Bar v. Bond,* 460 So.2d 375 (Fla.1984); *The Florida Bar v. Powers,* 458 So.2d 264 (Fla. 1984); *The Florida Bar v. Collier,* 458 So.2d 266 (Fla.1984); *The Florida Bar v. Turner,* 457 So.2d 474 (Fla.1984). Attorney Mart, not Riverside, would be liable to Chicago Title for the misuse or misapplication of Beacon's funds by attorney Mart.

Lis pendens is governed by Florida Statute Section 48.23 which provides that where an action is not founded on a duly recorded instrument or a mechanic's lien, the Court may control and discharge the Notice of Lis Pendens as the Court may grant and dissolve injunctions. Under Florida law, it is clear that the filing and recording of a lis pendens does not create a lien in property but, rather, merely serves as notice of the pendency of a lawsuit. *Manuel Sierra, M.D. d/b/a Golden Glades Medical Center v. Arlene Santana (In re Sierra),* 79 B.R. 89 (Bankr.S.D.Fla.1987), *Levine v. Arvida Corporation,* 405 So.2d 1370 (Fla.App. 4th D.C.A.1981); *Procacci v. Zacco,* 402 So.2d 425 (Fla.App. 4th D.C. A.1981); *National Bank of Sarasota v. J.T. Dugger,* 335 So.2d 859 (Fla.App. 2d D.C.A.1976). Based on the foregoing, the Court finds that no lien was created in favor of Chicago Title by the recording of the lis pendens and amended lis pendens. Furthermore, the Court finds that the lis pendens was improperly recorded against the Riverside shopping center since no claim exists against Riverside and in favor of Chicago Title and, therefore, the lis pendens is dissolved.

■ Lastly, Chicago Title argues that a constructive trust should be imposed against the Riverside shopping center with respect to the funds alleged to have been improperly diverted to Riverside. As stated above, the money to purchase and develop the Riverside shopping center was supplied in its entirety by NCNB, the limited

partners and the general partners. These funds were deposited by Riverside to the attorney trust account of attorney Mart and Riverside was entitled to receive the benefits of all monies so deposited and, in fact, Riverside is still due an amount in excess of $125,000.00 from that account. In light of the foregoing findings, there is no basis for Chicago Title's request for the imposition of a constructive trust or equitable lien on the Riverside shopping center.

In summary, the Court finds the lis pendens to have been improperly recorded by Chicago Title against the Riverside shopping center, that Chicago Title has no claim, unsecured or secured, against Riverside and, for these reasons, the lis pendens is dissolved and the claim of Chicago Title against Riverside is stricken and disallowed.

A separate Final Judgment of even date has been entered in conformity herewith.